UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

Maxon Hyundai Mazda, NYLSI Inc. d/b/a Sunrise Toyota,
Tarrytown Honda, Biener Audi, Crestview Cadillac Corp.,
d/b/a Crest Cadillac, County Line Buick Nissan, County Line
Carriage Inc. d/b/a Auto Jocks, Perrine Auto Group, Tenafly Kia –
Teterboro CJDR, Chilson Subaru, Chilson Corner Motors,
Townsend Bros. Inc d/b/a Townsend Brothers Chevrolet,
Moore Family of Dealerships, RCG Realty Management, Inc/
Bob Ciasulli Auto Group - Toyota Universe, RCG Realty
Management, Inc/ Bob Ciasulli Auto Group -Tri County Lexus,
RCG Realty Management, Inc/Bob Ciasulli Auto
Group-Metro Honda, RCG Realty Management, Inc
/Bob Ciasulli Auto Group - Glalaxy Toyota, RCG Realty
Management, Inc/Bob Ciasulli Auto Group- Honda Universe,
RCG Realty Management, Inc/Bob Ciasulli Auto Group-
Honda of Toms River, Ron Bouchard's Auto Sales, Inc.,
Ron Bouchard's Auto Sales, Inc. – Acura, JMK East LLC
d/b/a JMK Saab-Fiat, JMK Auto Sales Inc. d/b/a JMK BMW,
Northtown Toyota Scion, Northtown Hyundai
Subaru, Northtown Mazda KIA, Northtown Chrysler Jeep
Dodge, Northtown Lexus, Northtown Volvo Porsche Land
Rover of Buffalo, Bill Kolb Jr. Subaru, Inc., Gault Chevrolet,
Gault Toyota, Gault Auto Sport BMW, Gault Volkswagen,
Miller Motor Car Corp., Sutton Ford Lincoln, Waco Dodge,
Inc. d/b/a Waco Hyundai, 21st Century Auto Group, Metro
Chrysler Plymouth Inc., Habberstad BMW of Huntington,
Route 23 Honda, Masterz Automotive Intl Inc. f/k/a Master
Cars USA, Inc. d/b/a Masters, Salerno * Duane Infiniti d/b/a
Infiniti of Denville, Jim Salerno Pontiac Buick GMC Truck, Inc.
d/b/a Jim Salerno Buick GMC Truck, Salerno Duane Inc. d/b/a
Salerno Duane Chrysler Jeep Dodge, Route 18 Auto Group LLC
d/b/a Route 18 Chrysler Jeep Dodge, Outten Buick-Pontiac, Inc.
d/b/a Outten Chevrolet of Hamburg, Outten Motors, LLC d/b/a
Outten Chrysler Dodge Jeep Ram, Outten Automotive, Inc. d/b/a
Outten Kia, Outten Chevrolet, Inc.,W.S. Healey Chevrolet Buick, Inc.,
Healey Chevrolet, Inc., Healey Hyundai, Inc., Healey Ford Lincoln,
LLC, Healey Used Car Outlet LLC d/b/a Healey KIA , Healey Chrysler
Dodge Jeep LLC, Healey Automotive LLC d/b/a Healey Mitsubishi,
Harden Motor Car Corp. d/b/a Mohawk Honda, Star Hyundai, LLC,
Star Toyota, Star Nissan, Bayside Chrysler, Yellowstone Country Motors,
Jaguar of Freeport, Timco d/b/a/ Planet Honda, Sovreign
Motor Cars LTD, Bellavia Buick, Inc., Arnold Chevrolet,
LLC, Thomas Dodge Corp D/B/A Cash for Cars, Durand Chevrolet,
Durand Toyota-Ford, WR Thomas Inc, d/b/a Direct Auto Plaza, Life Quality

13 CV 2680

Civil Action No.

**COMPLAINT**

JUDGE NATHAN

**Jury Trial Demanded**

RECEIVED
APR 2 3 2013
U.S.D.C. S.D.N.Y.
CASHIERS

BMW, Cardinal Honda, Heinrich Chevrolet, North Bay Cadillac Buick-GMC,
Jaguar of Great Neck, Great Neck Suzuki, Manfredi Motors Inc.
d/b/a SI Toyota, Cherry Hill Mercedes Benz, Cherry Hill
Imports, Range Rover of Cherry Hill, James Toyota,
Martin Swanty Kia, Martin Swanty Chrysler Jeep Dodge,
Martin Swanty Hyundai, Swanty's Chrysler Jeep Dodge,
Schumacher Auto Group, Schumacher Automotive,
Offlease4less, Manfredi Chevrolet, Manfredi Motors
Inc. d/b/a Manfredi Kia, Manfredi Cadillac Inc. d/b/a
Manfredi Hyundai, Manfredi Chrysler Jeep & Dodge,
LLC, SI Safe Auto, LLC d/b/a Manfredi Mazda, Nissan
World of Dartmouth, Nissan World of Denville, Nissan World
of Red Bank, Nissan World of Springfield, Toyota World of
Lakewood, Toyota World of Newton, Subaru World of Newton,
Fitzgerald Automall Countryside, Fitzgerald Automall Countryside
North, Fitzgerald Automall Countryside, Fitzgerald Automall Annapolis
West Street, Fitzgerald Automall Annapolis Hudson Street,
Fitzgerald Automall Frederick Baughmans Lane, Fitzgerald Automall
Lake Forest N. Frederick, Fitzgerald Automall Lake Forest, Fitzgerald
Automall Lexington Park, Fitzgerald Automall White Flint, Fitzgerald
Automall Chambersburg, The Dorschel Group d/b/a Dorschel Lexus,
Infiniti, Nissan, Volkswagen, Saab d/b/a Dorschel Resale Center, The
Dorschel Group d/b/a Dorschel Toyota, The Dorschel Group d/b/a
Dorschel KIA, DGM, LLC d/b/a MINI of Rochester, Kia Tacoma, Burien
Nissan, Renton Hyundai, Car Pros Renton

Plaintiffs,

-against-

CARFAX, INC., a Pennsylvania corporation,

Defendant.

-------------------------------------------------------------------------X

Plaintiffs, by their attorneys, Bellavia Blatt Andron & Crossett, PC complaining of

Defendant Carfax, Inc. ("Defendant" or "Carfax"), allege as follows:

2

## PRELIMINARY STATEMENT

Defendant Carfax is a monopolist in the sale of Vehicle History Reports ("VHRs") on used automobiles and light trucks in the United States, with a 90 percent market share. As set forth herein, Carfax has unlawfully acquired and maintained its market power in VHRs through exclusivity agreements with numerous major players in the auto industry. Through these exclusive agreements, Carfax requires the Plaintiff auto dealers to purchase Carfax VHRs on every used car sold in 37 of 40 Certified Pre-Owned ("CPO") auto sales programs of domestic and foreign-based automobile manufacturers, and every used car Plaintiff auto dealers list for sale on the two largest websites providing classified used automotive listings, Autotrader.com and Cars.com. By contractually committing these two websites to include hyperlinks to Carfax VHRs and to exclude VHRs of any other provider, Carfax has stigmatized any listing without such a link in the eyes of consumers who infer that the absence means that the car has a blemished history. As a result of these exclusivity agreements, therefore, the Plaintiff auto dealers are effectively compelled to purchase Carfax VHRs for their used car inventory and supply them free of charge to persons shopping for used cars, despite the fact that other suppliers of VHRs offer more reliable VHRs at substantially lower prices than those charged by Carfax.

The purchase of VHRs represents a substantial operating expense for the Plaintiff auto dealers, ranging from about $10,000 per year for smaller auto dealers, to multiple tens of thousands of dollars per year for larger auto dealers. As set forth herein, Carfax's anticompetitive practices have thwarted competition in the publication and sale of VHRs in the United States, which has diminished the quality of VHRs, increased their prices, and caused harm to consumers. In a free and competitive market for VHRs, where they were not compelled to purchase Carfax VHRs at prices inflated by the antitrust violations alleged herein, Plaintiff

auto dealers would have the unfettered opportunity to purchase VHRs of superior reliability from alternative suppliers at competitive prices. Carfax also utilizes these inflated revenues to disparage and falsely malign dealers in order to mislead consumers into believing its VHRs were necessary and accurate. A free and competitive market for VHRs unrestrained by Carfax's antitrust violations would also provide great benefit to consumers, who would find greater availability of more reliable VHRs. Given the foregoing, Plaintiffs bring these claims, seeking injunctive relief from Carfax's anticompetitive practices in violation of the antitrust laws, and to recover damages they have incurred by having to pay more to Carfax for VHRs than they would have paid in a free and competitive market.

## I. NATURE OF THE ACTION

1.     This is an action under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, wherein Plaintiffs seek treble damages, attorneys' fees and costs, and injunctive relief, for Defendant's violations of the federal antitrust laws.

## II. JURISDICTION, VENUE AND INTERSTATE COMMERCE

2.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, and 28 U.S.C. § 1331 and 1337(a).

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), because a substantial number of the transactions giving rise to Plaintiffs' claims and damages arise in this District, and pursuant to 15 U.S.C. § 22, because Defendant transacts business in this District.

4.      Personal jurisdiction over Defendant has been established pursuant to 15 U.S.C. § 22 by personal service of process in the District in which Defendant is an inhabitant or may be found.

5.      Defendant is in the business, *inter alia*, of providing vehicle history information, both at wholesale and retail, to potential buyers and sellers of pre-owned or "used" automobiles and light trucks, persons in the business of financing sales and leases of used automobiles and light trucks (i.e., banks and finance companies), and persons in the business of insuring owners and lessees of used automobiles and light trucks.

6.      The Defendant offers Vehicle History Reports ("VHRs"), which contain information on title information, flood damage history, total loss accident history, odometer readings, lemon history, number of owners, accident indicators, state emissions inspection results, service records, and vehicle use.

7.      Defendant assembles such information in large computerized databases and sells VHRs via (a) a nationwide and international sales force of its employees, (b) nationwide and international advertising and media, and (c) an elaborate Internet website (www.carfax.com).

8.      Defendant's business of publishing and selling VHRs, and its antitrust violations more fully described herein below, substantially and directly affect the flow of interstate commerce.

### III. THE PARTIES

9.      Plaintiffs are automobile and light truck dealers, engaged *inter alia* in the business of buying and selling used automobiles and light trucks. The purchase of VHRs for used automobile and light trucks acquired and sold in Plaintiffs' businesses and the furnishing of VHRs to potential buyers of used automobiles and light trucks in Plaintiffs' vehicle inventory is

an indispensable part of, and represents a significant cost component of, Plaintiffs' used automobile and light truck business.

10.   Plaintiff NYLSI Inc. d/b/a Sunrise Toyota is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3984 Sunrise Highway, Oakdale, New York 11769, engaged in the business of buying and selling used automobiles and light trucks.

11.   Plaintiff Tarrytown Honda is a corporation organized and existing under the laws of the State of new York, with its principal place of business at 480 South Broadway, Tarrytown, New York, 10591, engaged in the business of buying and selling used automobiles and light trucks.

12.   Plaintiff Biener Audi is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 795 Northern Blvd., Great Neck, New York, 11021, engaged in the business of buying and selling used automobiles and light trucks.

13.   Plaintiff Crestview Cadillac Corp. d/b/a Crest Cadillac is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 717 West Genesee Street, Syracuse, New York, 13204, engaged in the business of buying and selling used automobiles and light trucks.

14.   Plaintiff County Line Buick Nissan is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at 2191 Straits Turnpike, Middlebury, CT, 06762, engaged in the business of buying and selling used automobiles and light trucks.

15.   Plaintiff County Line Carriage Inc d/b/a Auto Jocks is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at

2160 Straits Tpke, Middlebury, CT, 06762, engaged in the business of buying and selling used automobiles and light trucks.

16.    Plaintiff Perrine Auto Group is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2730 Rt 130, Cranbury, New Jersey, 08512, engaged in the business of buying and selling used automobiles and light trucks.

17.    Plaintiff Tenafly Kia – Teterboro Chrysler Jeep Dodge Ram, is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 95 County Road, Tenafly, New Jersey, 07670, engaged in the business of buying and selling used automobiles and light trucks.

18.    Plaintiff Chilson Subaru is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business at 3443 South Highway 93, Eau Claire, Wisconsin, 54701, engaged in the business of buying and selling used automobiles and light trucks.

19.    Plaintiff Townsend Bros. Inc d/b/a Townsend Bros Chevrolet is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1450 S. Dupont Hwy., Dover, Delaware, 19901, engaged in the business of buying and selling used automobiles and light trucks.

20.    Plaintiff Moore Family of Dealerships is a corporation organized and existing under the laws of the State of Virginia with its principal place of business at 9177 West Broad Street, Richmond, VA, 23294, engaged in the business of buying and selling used automobiles and light trucks.

21.     Plaintiff RCG Realty Management, Inc/Bob Ciasulli Auto Group - Toyota Universe is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1485 Route 46 East, Little Falls, New Jersey, 07424, engaged in the business of buying and selling used automobiles and light trucks.

22.     Plaintiff RCG Realty Management, Inc. /Bob Ciasulli Auto Group - Tri County Lexus is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 700 US 46, Little Falls, New Jersey, 07305, engaged in the business of buying and selling used automobiles and light trucks.

23.     Plaintiff RCG Realty Management, Inc/Bob Ciasulli Auto Group – Metro Honda is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 540 New Jersey 440, jersey City, New Jersey, 07305, engaged in the business of buying and selling used automobiles and light trucks.

24.     Plaintiff RCG Realty Management, Inc/Bob Ciasulli Auto Group – Galaxy Toyota is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 750 New Jersey 36, Eatontown, New Jersey, 07724, engaged in the business of buying and selling used automobiles and light trucks.

25.     Plaintiff RCG Realty Management, Inc/Bob Ciasulli Auto Group – Honda Universe is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1085 New Jersey 88, Toms River, New Jersey, 08701, engaged in the business of buying and selling used automobiles and light trucks.

26.     Plaintiff RCG Realty Management, Inc/Bob Ciasulli Auto Group – Honda of Toms River is a corporation organized and existing under the laws of the State of New Jersey,

with its principal place of business at 346 New Jersey 37, Toms River, New Jersey, 08753, engaged in the business of buying and selling used automobiles and light trucks.

27.    Plaintiff Ron Bouchard's Auto Sales, Inc. is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business at 500 Old Union Tpke., Lancaster, MA, 01523, engaged in the business of buying and selling used automobiles and light trucks.

28.    Plaintiff Ron Bouchard's Auto Sales, Inc. - Acura is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 476 Southbridge Street, Auburn, MA, 01501, engaged in the business of buying and selling used automobiles and light trucks.

29.    Plaintiff JMK East LLC d/b/a JMK Saab-Fiat is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 345 Route 22, Springfield, New Jersey, 07081, engaged in the business of buying and selling used automobiles and light trucks.

30.    Plaintiff JMK Auto Sales, Inc. d/b/a JMK BMW is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 391 Route 22 East, Springfield, New Jersey, 07081, engaged in the business of buying and selling used automobiles and light trucks.

31.    Plaintiff Northtown Toyota Scion is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1135 Millersport Hwy, Buffalo, New York, 14226, engaged in the business of buying and selling used automobiles and light trucks.

32.     Plaintiff Northtown Hyundai Subaru is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3675 Sheridan Dr., Amherst, New York, 14226, engaged in the business of buying and selling used automobiles and light trucks.

33.     Plaintiff Northtown Mazda KIA is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3900 Sheridan Dr., Amherst, New York, 14226, engaged in the business of buying and selling used automobiles and light trucks.

34.     Plaintiff Northtown Chrysler Jeep Dodge is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2020 Niagara Falls Blvd, Tonawanda, New York, 14150, engaged in the business of buying and selling used automobiles and light trucks.

35.     Plaintiff Northtown Lexus is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3845 Sheridan Dr, Amherst, New York, 14226, engaged in the business of buying and selling used automobiles and light trucks.

36.     Plaintiff Northtown Volvo Porsche Land Rover of Buffalo is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 8135 Main St, Williamsville, New York, 14221, engaged in the business of buying and selling used automobiles and light trucks.

37.     Plaintiff Bill Kolb Jr. Subaru Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 252 New York 303,

Orangeburg, New York, 10962, engaged in the business of buying and selling used automobiles and light trucks.

38.     Plaintiff Gault Chevrolet is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2507 North Street, Endicott, New York, 13760, engaged in the business of buying and selling used automobiles and light trucks.

39.     Plaintiff Gault Toyota is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2205 North Street, Endicott, New York, 13760, engaged in the business of buying and selling used automobiles and light trucks.

40.     Plaintiff Gault Auto Sport BMW is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2507 North Street, Endicott, New York, 13760, engaged in the business of buying and selling used automobiles and light trucks.

41.     Plaintiff Gault Volkswagen is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2409 North Street, Endicott, New York, 13760, engaged in the business of buying and selling used automobiles and light trucks.

42.     Plaintiff Miller Motor Car Corp. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 4455 Vestal Parkway, P.O. Box 37, Vestal, New York, 13851, engaged in the business of buying and selling used automobiles and light trucks.

43.     Plaintiff Sutton Ford Lincoln is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 21315 Central Avenue,

Matteson, IL, 60443, engaged in the business of buying and selling used automobiles and light trucks.

44.    Plaintiff Waco Dodge, Inc. d/b/a Waco Hyundai is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1501 W Loop 340, Waco, Texas, 76712, engaged in the business of buying and selling used automobiles and light trucks.

45.    Plaintiff 21st Century Auto Group is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 303 Route 22 East, Springfield, New Jersey, 07444, engaged in the business of buying and selling used automobiles and light trucks.

46.    Plaintiff Chilson Corner Motors is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business at 448 E Chippewa St, Cadott, WI, 54727, engaged in the business of buying and selling used automobiles and light trucks.

47.    Plaintiff Metro Chrysler Plymouth Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 211-10 Jamaica Ave., Queens Villages, New York, 11488, engaged in the business of buying and selling used automobiles and light trucks.

48.    Plaintiff Habberstad BMW of Huntington is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 945 East Jericho, Huntington Station, New York, 11746, engaged in the business of buying and selling used automobiles and light trucks.

49.    Plaintiff Maxon Hyundai Mazda is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2329 Route 22 W, Union,

New Jersey, 07083, engaged in the business of buying and selling used automobiles and light trucks.

50.     Plaintiff Route 23 Honda is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 700 Route 23, Pompton Plains, New Jersey, 07444, engaged in the business of buying and selling used automobiles and light trucks.

51.     Plaintiff Masterz Automotive Intl Inc. f/k/a Master Cars USA, Inc. d/b/a Masters is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 275 Northern Boulevard, Great Neck, New York, 11021, engaged in the business of buying and selling used automobiles and light trucks.

52.     Plaintiff Salerno * Duane Infiniti, LLC d/b/a Infiniti of Denville is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 3103 Route 10 East, Denville, New Jersey, 07834, engaged in the business of buying and selling used automobiles and light trucks.

53.     Plaintiff Jim Salerno Pontiac Buick GMC Truck, Inc. d/b/a Jim Salerno Buick GMC Truck is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1005 Route 10 East, Randolph, New Jersey, 07869, engaged in the business of buying and selling used automobiles and light trucks.

54.     Plaintiff Salerno Duane Inc. d/b/a Salerno Duane Chrysler Jeep Dodge is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 267 Broad Street, Summit, New Jersey, 07901, engaged in the business of buying and selling used automobiles and light trucks.

55.     Plaintiff Route 18 Auto Group LLC d/b/a Route 18 Chrysler Keep Dodge is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 400 State Route 18, East Brunswick, New Jersey, 08816, engaged in the business of buying and selling used automobiles and light trucks.

56.     Plaintiff Outten Buick-Pontiac, Inc. d/b/a Outten Chevrolet of Hamburg is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 1080 S 4th St, Hamburg, PA, 19528, engaged in the business of buying and selling used automobiles and light trucks.

57.     Plaintiff Outten Motors, LLC d/b/a Outten Chrysler Dodge Jeep Ram is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 16614 Pottsville Pike, Hamburg, PA, 19526, engaged in the business of buying and selling used automobiles and light trucks.

58.     Plaintiff Outten Automotive, Inc. d/b/a Outten KIA is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 S 4th Street, Hamburg, PA, 19526, engaged in the business of buying and selling used automobiles and light trucks.

59.     Plaintiff W.S. Healey Chevrolet Buick, Inc.  is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 5216 Route 17m, New Hampton, NY, 10958, engaged in the business of buying and selling used automobiles and light trucks.

60.     Plaintiff Healey Chevrolet, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1960 South Road,

Poughkeepsie, NY, 12601, engaged in the business of buying and selling used automobiles and light trucks.

61.     Plaintiff Healey Hyundai, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 410 Fishkill Avenue, Beacon, NY, 12508, engaged in the business of buying and selling used automobiles and light trucks.

62.     Plaintiff Healey Ford Lincoln, LLC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2528 Route 17m, Goshen, NY, 10924, engaged in the business of buying and selling used automobiles and light trucks.

63.     Plaintiff Healey Used Car Outlet, LLC d/b/a Healey KIA is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 130 Temple Hill Road, Vails Gate, NY, 12584, engaged in the business of buying and selling used automobiles and light trucks.

64.     Plaintiff Healey Chrysler Dodge Jeep, LLC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 557 Route 52, Beacon, NY, 12508, engaged in the business of buying and selling used automobiles and light trucks.

65.     Plaintiff Healey Automotive LLC d/b/a Healey Mitsubishi is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2528 Route 17m, Goshen, NY, 10924, engaged in the business of buying and selling used automobiles and light trucks.

66.    Plaintiff Harden Motor Car Corp, d/b/a Mohawk Honda is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 175 Freemans Bridge Rd., Scotia, NY, 12302, engaged in the business of buying and selling used automobiles and light trucks.

67.    Plaintiff Star Hyundai LLC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 201-16 Northern Blvd, Bayside, NY, 11361, engaged in the business of buying and selling used automobiles and light trucks.

68.    Plaintiff Star Toyota is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 205-11 Northern Blvd, Bayside, NY, 11361, engaged in the business of buying and selling used automobiles and light trucks.

69.    Plaintiff Star Nissan is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 206-02 Northern Blvd, Bayside, NY, 11361, engaged in the business of buying and selling used automobiles and light trucks.

70.    Plaintiff Bayside Chrysler is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 212-19 Northern Blvd, Bayside, NY, 11361, engaged in the business of buying and selling used automobiles and light trucks.

71.    Plaintiff Yellowstone Country Motors is a corporation organized and existing under the laws of the State of Montana, with its principal place of business at 1415 W. Park St., Livingston, MT, 59047, engaged in the business of buying and selling used automobiles and light trucks.

72.    Plaintiff Jaguar of Freeport is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 146 W. Sunrise Hwy, Freeport, NY, 11520, engaged in the business of buying and selling used automobiles and light trucks.

73.     Plaintiff Timco, Inc d/b/a Planet Honda is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2285 US Highway 22 W, Union, NJ, 07083, engaged in the business of buying and selling used automobiles and light trucks.

74.     Plaintiff Sovreign Motor Cars LTD is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1325 Franklin Ave, Garden City, NY, 11530, engaged in the business of buying and selling used automobiles and light trucks.

75.     Plaintiff Bellavia Buick, Inc. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 199 New Jersey 17, Rutherford, NJ, 10958, engaged in the business of buying and selling used automobiles and light trucks.

76.     Plaintiff Arnold Chevrolet, LLC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 670 Montauk Hwy., West Babylon, NY, 11704, engaged in the business of buying and selling used automobiles and light trucks.

77.     Plaintiff Thomas Dodge Corp D/B/A Cash for Cars is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1752 Middle Country Rd., Centereach, NY, 11720, engaged in the business of buying and selling used automobiles and light trucks.

78.     Plaintiff Durand Chevrolet is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business at 223 Washington St.,

Hudson, MA, 01749, engaged in the business of buying and selling used automobiles and light trucks.

79.     Plaintiff Durand Toyota-Ford is a corporation organized and existing under the laws of the State of Vermont, with its principal place of business at 6896 Route 5, West Minister, VT, 05158, engaged in the business of buying and selling used automobiles and light trucks.

80.     Plaintiff Outten Chevrolet, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1701 W Tilghman St., Allentown, PA, 18104, engaged in the business of buying and selling used automobiles and light trucks.

81.     Plaintiff W R Thomas Inc, d/b/a Direct Auto Plaza is a corporation organized and existing under the laws of the State of California, with its principal place of business at 664 Thomas Lane, El Centro, CA, 92243, engaged in the business of buying and selling used automobiles and light trucks.

82.     Plaintiff Life Quality BMW is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 9326 4th Ave., Brooklyn, NY, 11220, engaged in the business of buying and selling used automobiles and light trucks.

83.     Plaintiff Cardinal Honda is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business at 531 Connecticut 12, Groton, CT, 10958, engaged in the business of buying and selling used automobiles and light trucks.

84.     Plaintiff Heinrich Chevrolet is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 5775 S Transit Road, Lockport, NY, 14094, engaged in the business of buying and selling used automobiles and light trucks.

85.     Plaintiff North Bay Cadillac Buick-GMC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 720 Northern Blvd., Great Neck, NY, 11021, engaged in the business of buying and selling used automobiles and light trucks.

86.     Plaintiff Jaguar of Great Neck is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 732 Northern Blvd., Great Neck, NY, 11021, engaged in the business of buying and selling used automobiles and light trucks.

87.     Plaintiff Great Neck Suzuki is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 46 Northern Blvd., Great Neck, NY, 11021, engaged in the business of buying and selling used automobiles and light trucks.

88.     Plaintiff Manfredi Motors Inc. d/b/a SI Toyota is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1591 Hylan Blvd., Staten Island, NY, 10306, engaged in the business of buying and selling used automobiles and light trucks.

89.     Plaintiff Cherry Hill Mercedes Benz is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2151 Route 70 W, Cherry Hill, NJ, 08002, engaged in the business of buying and selling used automobiles and light trucks.

90.     Plaintiff Cherry Hill Imports is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 2261 Route 70 W, Cherry Hill, NJ, 08002, engaged in the business of buying and selling used automobiles and light trucks.

91.     Plaintiff Range Rover of Cherry Hill is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1100 Haddenfield Rd., Cherry Hill, NJ, 08002, engaged in the business of buying and selling used automobiles and light trucks.

92.     Plaintiff James Toyota is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 174 Route 202, Flemington, NJ, 08822, engaged in the business of buying and selling used automobiles and light trucks.

93.     Plaintiff Martin Swanty Kia is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 2610 East Andy Devine Ave., Kingman, AZ, 86401, engaged in the business of buying and selling used automobiles and light trucks.

94.     Plaintiff Martin Swanty Chrysler Jeep Dodge is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 2640 East Andy Devine Ave., Kingman, AZ, 86401, engaged in the business of buying and selling used automobiles and light trucks.

95.     Plaintiff Martin Swanty Hyundai is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 4180 N Stockton Hill Rd., Kingman, AZ, 86409, engaged in the business of buying and selling used automobiles and light trucks.

96.     Plaintiff Swanty's Chrysler Jeep Dodge is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 2494 Arizona 95, Bullhead City, AZ, 86442, engaged in the business of buying and selling used automobiles and light trucks.

97.     Plaintiff Schumacher Auto Group is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 3031 Okeechobee Blvd., West Palm Beach, FL, 33409, engaged in the business of buying and selling used automobiles and light trucks.

98.     Plaintiff Schumacher Automotive is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 3720 North Lake Blvd, Lake Park, FL, 33403, engaged in the business of buying and selling used automobiles and light trucks.

99.     Plaintiff Offlease4less is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 3015 Exchange Court, West Palm Beach, FL, 33409, engaged in the business of buying and selling used automobiles and light trucks.

100.    Plaintiff Manfredi Chevrolet is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 2519 Hylan Blvd., Staten Island, NY, 10306, engaged in the business of buying and selling used automobiles and light trucks.

101.    Plaintiff Manfredi Motors Inc. d/b/a Manfredi Kia is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1976 Hylan Blvd., Staten Island, NY, 10306, engaged in the business of buying and selling used automobiles and light trucks.

102.    Plaintiff Manfredi Cadillac Inc. d/b/a Manfredi Hyundai is a corporation organized and existing under the laws of the State of New York, with its principal place of

business at 1257 Hylan Blvd., Staten Island, NY, 10305, engaged in the business of buying and selling used automobiles and light trucks.

103. Plaintiff Manfredi Chrysler Jeep & Dodge, LLC is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1239 Hylan Blvd., Staten Island, NY, 10305, engaged in the business of buying and selling used automobiles and light trucks.

104. Plaintiff SI Safe Auto, LLC d/b/a Manfredi Mazda is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 1976 Hylan Blvd., Staten Island, NY, 10305, engaged in the business of buying and selling used automobiles and light trucks.

105. Plaintiff Nissan World of Dartmouth is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business at 483 State Road, Route 6, North Dartmouth, MA, 02747, engaged in the business of buying and selling used automobiles and light trucks.

106. Plaintiff Nissan World of Denville is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 3057 Route 10 East, Denville, NJ, 07834, engaged in the business of buying and selling used automobiles and light trucks.

107. Plaintiff Nissan World of Red Bank is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 120 Newman Springs Rd., Red Bank, NJ, 07701, engaged in the business of buying and selling used automobiles and light trucks.

22

108. Plaintiff Nissan World of Springfield is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 146 Route 22, Springfield, NJ, 07081, engaged in the business of buying and selling used automobiles and light trucks.

109. Plaintiff Toyota World of Lakewood is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 1118 Ocean Ave. Route 88, Lakewood, NJ, 08701, engaged in the business of buying and selling used automobiles and light trucks.

110. Plaintiff Toyota World of Newton is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 66 Hampton House Rd., Newton, NJ, 07860, engaged in the business of buying and selling used automobiles and light trucks.

111. Plaintiff Subaru World of Newton is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at 84 Route 206, 84 Hampton House Rd., Newton, NJ, 07860, engaged in the business of buying and selling used automobiles and light trucks.

112. Plaintiff Fitzgerald Automall Countryside is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 27365 US Highway 19N, Clearwater, FL, 33761, engaged in the business of buying and selling used automobiles and light trucks.

113. Plaintiff Fitzgerald Automall Countryside North is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 84 27419

23

US Highway 19N, Clearwater, FL, 33761, engaged in the business of buying and selling used automobiles and light trucks.

114.    Plaintiff Fitzgerald Automall Countryside is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 28253 US Highway 19N, Clearwater, FL, 33761, engaged in the business of buying and selling used automobiles and light trucks.

115.    Plaintiff Fitzgerald Automall Annapolis West Street is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 1930 West Street, Annapolis, MD, 21401, engaged in the business of buying and selling used automobiles and light trucks.

116.    Plaintiff Fitzgerald Automall Annapolis Hudson Street is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 34 Hudson Street, Annapolis, MD, 21401, engaged in the business of buying and selling used automobiles and light trucks.

117.    Plaintiff Fitzgerald Automall Frederick Baughmans Lane is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 114 Baughmans Lane, Frederick, MD, 21702, engaged in the business of buying and selling used automobiles and light trucks.

118.    Plaintiff Fitzgerald Automall Lake Forest N. Frederick is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 907 North Frederick Ave, Gaithersburg, MD, 20879, engaged in the business of buying and selling used automobiles and light trucks.

119.    Plaintiff Fitzgerald Automall Lake Forest is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 905 Russell Ave., Gaithersburg, MD, 20879, engaged in the business of buying and selling used automobiles and light trucks.

120.    Plaintiff Fitzgerald Automall Lexington Park is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 22231 Three Notch Rd (RT. 235), Lexington Park, MD, 20553, engaged in the business of buying and selling used automobiles and light trucks.

121.    Plaintiff Fitzgerald Automall White Flint is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business at 11411 Rockville Pike, North Bethesda, MD, 20895, engaged in the business of buying and selling used automobiles and light trucks

122.    Plaintiff Fitzgerald Automall Chambersburg is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 1436 Lincoln Way East, Chambersburg, PA, 17202 engaged in the business of buying and selling used automobiles and light trucks.

123.    Plaintiff The Dorschel Group d/b/a Dorschel Lexus, Infiniti, Nissan, Volkswagen, Saab d/b/a Dorschel Resale Center is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3817 W. Henrietta Rd.., Rochester, NY, 14623, engaged in the business of buying and selling used automobiles and light trucks.

124.    Plaintiff The Dorschel Group d/b/a Dorschel Toyota is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3399

25

W. Henrietta Rd., Rochester, NY, 14623, engaged in the business of buying and selling used automobiles and light trucks.

125.   Plaintiff The Dorschel Group d/b/a Dorschel Kia is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3820 W. Henrietta Rd., Rochester, NY, 14623, engaged in the business of buying and selling used automobiles and light trucks.

126.   Plaintiff DGM, LLC d/b/a Mini of Rochester d/b/a MINI of Rochester is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 3875 W. Henrietta Rd., Rochester, NY, 14623, engaged in the business of buying and selling used automobiles and light trucks.

127.   Plaintiff Kia Tacoma is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 7230 South Tacoma Way, Tacoma, WA, 98409, engaged in the business of buying and selling used automobiles and light trucks.

128.   Plaintiff Burien Nissan is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 16042 First Ave., Burien, WA, 98148, engaged in the business of buying and selling used automobiles and light trucks.

129.   Plaintiff Renton Hyundai is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 700 South Grady Way, Renton, WA, 98057, engaged in the business of buying and selling used automobiles and light trucks.

130.   Plaintiff Car Pros Renton is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 585 Rainier Ave. South, Renton, WA, 98057, engaged in the business of buying and selling used automobiles and light trucks.

131.   Carfax is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at Centreville, Virginia. Carfax is in the business, *inter alia*, of preparing and selling VHRs throughout the United States and foreign countries.

## IV.   JOINDER

132.   Joinder of the Plaintiffs' claims in this action is proper, based on the existence of questions of law and fact common to all of the Plaintiffs, arising out of their purchase of VHRs from Defendant Carfax at prices artificially inflated by the antitrust violations alleged herein. The common questions of law and fact are:

(a)   whether the publication and sale of VHRs in the United States is the relevant market for Plaintiffs' federal antitrust claims against Carfax;

(b)   whether Carfax possesses market power in the market for the publication and sale of VHRs in the United States;

(c)   whether Carfax's exclusivity agreements with 37 of 40 automobile manufacturers sponsoring CPO programs, as set forth infra at paragraphs [158—169], violate Section 3 of the Clayton Act, 15 U.S.C. § 14, Section 1 of the Sherman Act, 15 U.S.C. § 1, and/or Section 2 of the Sherman Act, 15 U.S.C. § 2;

(d)   whether Carfax's exclusivity agreements with Autotrader and Cars.com., as set forth infra at paragraphs [170—184], violate Section 3 of the Clayton Act, 15 U.S.C. § 14, Section 1 of the Sherman Act, 15 U.S.C. § 1, and/or Section 2 of the Sherman Act, 15 U.S.C. § 2;

(e)   whether Carfax has set the prices Plaintiffs have paid for VHR's at inflated levels through Carfax's exercise of market power;

(f)      whether Plaintiffs have been injured by having paid Carfax for VHRs at inflated levels through Carfax's exercise of market power;

(g)      whether such injury suffered by Plaintiffs is antitrust injury; and

(h)      whether the amount of Plaintiffs' damages may be determined by ascertaining the difference between the actual prices Plaintiffs paid Carfax for VHRs and the price at which VHRs would be sold in a competitive market free of the antitrust violations alleged herein.

133.   Plaintiffs' claims set forth herein are based on Plaintiffs' purchases of VHRs from Carfax pursuant to printed standard form contracts supplied to them by Carfax; Plaintiffs' participation in CPO programs pursuant to printed standard form contracts supplied to them by the automobile manufacturer sponsoring the CPO programs; and Plaintiffs' purchase of classified automotive listings for used automobiles and light trucks on Autotrader and Cars.com pursuant to standard form contracts supplied to them by the operators of those websites.

## V. COMMON FACTUAL ALLEGATIONS

134.   Each Plaintiff has done either or all of the following: (a) purchased Carfax VHRs as a condition of participating in a CPO program (b) placed classified used car listings on Autotrader.com or (c) placed classified used car listings on Cars.com.

135.   Each Plaintiff has either purchased Carfax VHRs at a monthly flat rate for an unlimited number of vehicles or at a per vehicle rate.

136.   Information about the condition and history of used automobile and light trucks offered for sale is a primary concern for both buyers and sellers. Many state and federal statutes have been enacted to alleviate problems of incomplete information about the condition and history of used automobile and light trucks that are offered for sale. These statutes variously

mandate state-wide and nation-wide centralized reporting of events likely to affect the quality of used automobile and light trucks, such as title changes, salvage history, accident history, and odometer history.

137. The business of preparing and selling VHRs with complete or nearly complete information on used automobile and light trucks has emerged in response to the market need for information on the history and quality of used automobiles and light trucks offered for sale.

138. As a consequence, in recent years a VHR from a provider of such reports for any particular used vehicle offered for sale has become indispensable to both buyers and sellers of used vehicles.

139. The National Motor Vehicle Title Information System (NMVTIS), established under the Anti-Car Theft Act of 1992, 49 U.S.C. §§ 30501–30505, as amended, is an electronic repository of information required by law to be reported to a centralized federal database by all states, insurance carriers, and junk and salvage yards, from which NMVTIS VHRs are compiled by VIN number.

140. NMVTIS VHRs provide information on five key indicators of the quality and condition of any used automobile and light truck: (1) date of last title and name of state titling agency; (2) "brand" history applied by state titling agency, including "junk", "salvage", and "flood", (3) odometer reading, (4) total loss history, and (5) salvage history.

141. The NMVTIS website (www.vehiclehistory.gov) encourages consumers shopping for used cars to obtain privately prepared VHRs containing all information required by NMVTIS supplied by any of ten NMVTIS-approved "data provider companies".

142.   Such VHRs also contain additional information not required to be included by the NMVTIS, such as vehicle repair history, recall information, and other care and maintenance data.

143.   The ten approved vendors of NMVTIS VHRs are: Auto Data Direct, Inc. (www.ADD123.com); Carfax (www.carfax.com); CheckThatVin (www.CheckThatVin.com); Computerized   Vehicle   Registration   (www.CVRweb.com);   Experian   Automotive (www.AutoCheck.com);   InstaVin   (www.instavin.com);   Motor   Vehicle   Software   Corp. (www.mvsc.com); Rig Dig (www.rigdig.com); VinAudit (www.vinaudit.com); and VINsmart (www.VINsmart.com).

144.   Carfax is the oldest and by far the dominant provider of VHRs.

145.   Carfax supplies VHRs to more than 32,000 franchised and independent used-car dealers.

146.   Carfax was founded in 1986 by an individual and later sold to R.L. Polk & Co., a private entity that publishes information on the automobile industry.

147.   According to Exhibit C to the Complaint, in *Experian Information Solutions, Inc. v. Carfax, Inc.* (No. 11-CV-8927, N.D. Ill., filed on Dec. 16, 2011), Carfax claims a nation-wide market share of ninety percent in VHRs, and attributes its high market share to consumer lack of familiarity with any other source of VHRs.

148.   Experian's AutoCheck VHRs are supplied to about 13,000 franchised and independent used car dealers, who in turn furnish them to consumers shopping for used cars.

149.   Experian is a publicly-traded credit reporting agency supplying AutoCheck VHRs through its Automotive Division.

150.    AutoCheck has a market share of about ten percent of the VHRs sold in the United States.

151.    The other eight NMVTIS-approved vendors of VHRs are small, with negligible market shares.

152.    Despite significant concerns among used automobile and light truck dealers about the reliability of Carfax VHRs *vis-à-vis* VHRs of other providers, including Experian Automotive's AutoCheck, Carfax has acquired and maintained a ninety percent market share in the sale of VHRs in the United States.

153.    Carfax charges a significantly higher price to dealers for VHRs than the price charged by other providers of VHR's.

154.    Carfax charges dealers, pursuant to an annual subscription agreement, for VHRs either on a per vehicle basis, typically $16.95 per VHR, or a flat monthly fee for an unlimited number of VHRs per dealership location.

155.    The monthly price paid by the dealer for an unlimited number of VHRs is determined by Carfax based on the average number of used automobiles and light trucks in the dealer's inventory. That monthly fee ranges from $899 per dealership location for some dealers, to $1,549 per dealership location for other dealers.

156.    Although dealers may purchase an unlimited number of Experian Automotive's AutoCheck VHRs for less than half the price of Carfax VHRs, relatively few do so, despite significant concerns about the reliability of Carfax VHRs, due to consumer lack of familiarity with any VHRs other than Carfax and the anticompetitive practices alleged herein.

157.    Carfax has acquired and maintained its ninety percent market share in the sale of VHRs in the United States, not through competition on the merits, but through exclusivity

provisions contained in long-term "partnership" agreements with other powerful entities in the automobile industry. This has had the anticompetitive effect of forcing automobile dealers to purchase Carfax VHRs and provide them free of charge to consumers shopping for used cars.

158. One form of such exclusivity agreement is a long-term (typically, of three years duration and renewable) agreements between Carfax and U.S.-based or foreign-based automobile manufacturer sponsoring CPO (certified pre-owned) vehicle sales programs. Carfax has such an agreement with the manufacturers of 37 out of about 40 brands of used vehicles sold through the manufacturers' independently-owned franchised dealers.

159. CPO programs offer consumers extended warranties on used cars certified through extensive inspection processes, and such used cars are sold at a price premium in relation to other used cars.

160. Certified Pre-owned programs are programs offered by all major auto manufacturers through their networks of dealerships.

161. Certified used cars must meet specific condition, mileage, and age restrictions to be eligible for an Original Equipment Manufacturer ("OEM") CPO program. Used vehicles that do not meet these restrictions cannot be sold as a Certified Used Car through an OEM CPO program.

162. If a used vehicle meets condition, mileage, and age requirements, a vehicle history check is performed to make sure the vehicle's title is clean.

163. If the VHR is clean, the vehicle is thoroughly inspected by the dealership, and any worn parts are replaced with new parts. Then the vehicle is reconditioned inside and out with the goal of making it as close to new condition as possible. The VHR and the report detailing the

certified used-car inspection and reconditioning process are supplied with the vehicle at the time of sale.

164.    Pursuant to exclusivity agreements Carfax has entered into with manufacturers for 37 of about 40 vehicle brands, the manufacturers require dealers participating in CPO programs to purchase Carfax VHRs and supply them free of charge to every consumer shopping for any particular CPO vehicle.

165.    Upon and information and belief, pursuant to these exclusivity agreements with automobile manufacturers on CPO programs, Carfax provides cash or non-cash "marketing support" to the manufacturer for its CPO program.

166.    In October 2011, Carfax told one manufacturer, Subaru, that it would increase its annual cash or non-cash "marketing support" to Subaru's CPO program by at least $25,000 over a previous annual amount of $190,000, if Subaru entered into a three-year renewal of an existing long-term "partnership" agreement, rather than enter a CPO agreement with Experian for AutoCheck VHRs (Exhibit C to the Complaint, *Experian Information Solutions, Inc. v. Carfax, Inc.* (No. 11-CV-8927, N.D. Ill., filed on Dec. 16, 2011)).

167.    The anticompetitive effect of these exclusivity agreements is to force dealers participating in CPO programs to purchase overpriced and less reliable Carfax VHRs, in spite of dealers' preferences for competitively-priced and more reliable VHRs from other sources.

168.    According to Carfax's Internet website (www.carfax.com), Carfax entered such exclusive long-term "partnership" agreements on the following dates with manufacturers with respect to their CPO programs:

| | |
|---|---|
| Mercedes-Benz | 1998 |
| Volvo | 1999 |

| | |
|---|---|
| Volkswagen | 2003 |
| Audi | 2003 |
| Honda (and Acura) | 2004 |
| Toyota (and Lexus, Prius, Scion) | 2005 |
| Subaru | 2005 |
| Chrysler (and Dodge, Fiat, Jeep, Plymouth, Ram) | 2006 |
| General Motors (and Cadillac, Chevrolet, Buick, Hummer, Pontiac, Oldsmobile and Saturn) | 2007 |
| BMW (and Mini) | 2008 |
| Hyundai | 2009 |
| Lamborghini | 2009 |
| Kia | 2011 |
| Nissan (and Infiniti) | 2012 |
| Ford (and Lincoln, Mercury) | 2013 |

169.    Sales of CPO automobiles are a significant and growing segment of overall sales of used automobiles in the United States.  Published reports indicate that 1,834,746 CPO automobiles were sold in 2012, more than 12 percent of the annual used automobile sales by franchised automobile dealers in the United States (www.autoremarketing.com/retail/second-straight-year-record-cpo-sales).

170.    Another form of Carfax's exclusivity agreement is a long-term "partnership" agreement with certain leading operators of Internet websites that provide classified listings of used automobiles and light trucks. Pursuant to these agreements, website operators agree to display interactive links to Carfax VHRs purchased from Carfax by sellers of used vehicles listed

for sale on these websites, but not to display or interactively link VHRs from suppliers other than Carfax.

171.    Since 2005, Carfax has had such an exclusivity arrangement with the Autotrader Group, which operates an Internet website, www.Autotrader.com.

172.    Autotrader.com is a majority-owned subsidiary of Cox Enterprises. Other investors include Landmark Communications, ADP, Inc., and the venture capital firm Kleiner Perkins Caufield & Byers.

173.    The Autotrader website includes more classified listings of used vehicles than any other website, with classified listings of more than 3 million used vehicles offered for sale from 40,000 auto dealers and 250,000 private owners.

174.    Due to the exclusivity arrangement between Carfax and the Autotrader Group, if a seller of a particular used vehicle listed on Autotrader.com has purchased a Carfax VHR for that used vehicle, the Autotrader website provides a convenient interactive link to the Carfax VHR for that vehicle to shoppers. If the seller of that used vehicle, however, has not purchased a Carfax VHR for the used vehicle, the interactive link to a VHR for the used vehicle on the Autotrader website is empty, and the shopper cannot access a free VHR on the web page displaying the used vehicle.

175.    As a result, a consumer shopping for that used vehicle is left with the impression that the seller of that used vehicle has not purchased a VHR for the vehicle, which is a false impression when the seller has purchased a VHR for the used vehicle from a supplier other than Carfax that is not displayed on the website due to the exclusivity arrangement between Carfax and the Autotrader Group.

176.    Pursuant to its long-term exclusivity agreement with the Autotrader Group, Carfax provides significant cash or non-cash "marketing support" to the Autotrader Group, in order to obtain the agreement of the Autotrader Group to keep VHRs from providers other than Carfax off of the Autotrader.com website.

177.    The anticompetitive effect of this exclusivity arrangement between Carfax and the Autotrader Group is to force used car dealers, including Plaintiffs, to purchase Carfax VHRs, in spite of dealers' preferences for competitively-priced and more reliable VHRs from other sources.

178.    Since 2001, Carfax also has had a similar long-term exclusivity arrangement with Classified Ventures, which operates an Internet website, www.Cars.com.

179.    Classified Ventures is a joint venture of several large newspaper groups, including the Gannett Company, McClatchy Company, Washington Post Company, Tribune Company, and A.H. Belo.

180.    Classified Ventures' Cars.com is the second largest provider of classified listings of used automobiles and light trucks, with classified listings of 2.5 million used vehicles from 16,000 used car dealers and an undetermined number of private owners.

181.    Due to the exclusivity arrangement between Carfax and Classified Ventures, if a seller of a particular used vehicle listed on Cars.com has purchased a Carfax VHR for that used vehicle, the Cars.com website provides a convenient interactive link to the Carfax VHR for that vehicle to persons shopping for that used vehicle. If the seller of that used vehicle has not purchased a Carfax VHR for the used vehicle, the interactive link to a VHR for the used vehicle on the web page displaying the vehicle is empty, and the shopper cannot access a free VHR on the website for the vehicle.

182.    As a result, a consumer shopping for that used vehicle is left with the impression that the seller of that used vehicle has not purchased a VHR for the used vehicle, which is a false impression when the seller has purchased a VHR for the used vehicle from a supplier other than Carfax that is not displayed on the website due to the exclusivity arrangement between Carfax and Classified Ventures.

183.    The anticompetitive effect of this exclusivity arrangement between Carfax and the Classified Ventures is to force used car dealers, including Plaintiffs, to purchase Carfax VHRs, in spite of dealers' preferences for competitively-priced and more reliable VHRs from other sources.

184.    Pursuant to its exclusivity agreement with Classified Ventures, Carfax provides significant cash or non-cash "marketing support" to Classified Ventures, in order to obtain the agreement of the Classified Ventures to keep VHRs from providers other than Carfax off of the Cars.com website.

185.    Carfax's Internet website lists numerous additional entities in the automobile industry with which it has "partnership" arrangements.

186.    Discovery in this action is likely to uncover additional anticompetitive "partnership" arrangements between Carfax and other entities in the automobile industry, pursuant to which Carfax provides significant cash or non-cash "marketing support" to its "partners" in exchange for a commitment to deal exclusively with Carfax for VHRs on used automobiles and trucks offered for sale in the United States.

187.    The effect of Carfax's (a) exclusivity arrangements with manufacturers of 37 of about 40 automobile brands on their CPO programs, requiring participating dealers to purchase Carfax VHRs on certified vehicles and to provide them free of charge to consumers shopping for

used vehicles, (b) exclusivity arrangements with the two largest websites offering classified listing of used automobiles and light trucks offered for sale, requiring that only Carfax VHRs purchased by sellers of vehicles and no VHRs from other VHRs providers are displayed and interactively linked on the websites, together with (c) Carfax's pricing program which offers dealers of used automobiles and light trucks an unlimited number of VHRs at a rate determined by the number of used vehicles in their inventory, is to force dealers of used automobiles and light trucks to purchase Carfax VHRs for their entire inventory of used vehicles and to provide them free of charge to consumers shopping for used vehicles, in spite of dealers' preferences for competitively-priced and more reliable VHRs from other sources.

## VI. RELEVANT MARKET

188.   The publication and sale of VHRs in the United States is a relevant market for antitrust purposes. There is no reasonably interchangeable product or service that can be substituted for a VHR.

189.   VHRs are required by the NMVTIS to provide, at a minimum, information on five key indicators of the quality and condition of any used automobile and light truck: (1) date of last title and name of state titling agency; (2) "brand" history applied by state titling agency, including "junk", "salvage", and "flood", (3) odometer reading, (4) total loss history, and (5) salvage history. A complete used vehicle inspection by an automobile mechanic is a service that may augment a VHR on a particular vehicle, but it is unlikely to uncover historical events about a used vehicle that are expected to appear on a VHR.

190.   Carfax possesses a ninety percent market share in the publication and sale of VHRs in the United States.

191.    This predominate market share, together with: (a) consumer lack of familiarity with any other provider of VHR; (b) Carfax's ability, without losing market share, to charge dealers a price for its VHRs that is more than double the price that AutoCheck charges dealers for a VHR which is more reliable; (c) the existence of significant barriers to entry into the VHR marketplace indicate that Carfax possesses market power in the market for the publication and sale of VHRs in the United States.

192.    Market power is the ability of a seller of a product or service to profitably raise prices significantly above a competitive level without loss of sales to competitors.

193.    Barriers to entry into the market for publishing and selling VHRs in the United States include, but are not limited to:

    (a)    federal and state statutes and rules requiring minimum content of VHRs (e.g., NMVTIS);

    (b)    entrenched consumer familiarity with only one source of VHRs, reinforced by Carfax's marketing campaigns portraying itself as the sole provider of reliable VHRs;

    (c)    control of essential or superior resources (proprietary databases very expensive to duplicate);

    (d)    economies of scale in the collection and assembly of vast amounts of information on significant events in the history of each automobile or light truck by VIN number; and

    (e)    economies of scale in the marketing and provision of service and support to various entities in the automobile industry needing to avail themselves of VHRs in the purchase and sale of used automobiles and light trucks (vehicle manufacturers, franchised

dealers of vehicle manufacturers, non-franchised used automobile dealers, wholesale traders of used vehicles, wholesale auction houses, and the consuming public).

## VII. EFFECTS OF CARFAX'S ANTICOMPETITIVE CONDUCT

194.   Carfax's illegal, exclusionary and anticompetitive conduct has had and will continue to have the following effects, among others:

(a)   Competition in the market for the publication and sale of VHRs has been excluded by Carfax's forgoing exclusive long-term partnership agreements requiring that Carfax VHRs are the only VHRs used in nearly all automobile manufacturers' CPO programs and/or displayed on the largest websites offering classified listings of used automobiles and trucks offered for sale;

(b)   Plaintiffs and other purchasers of VHRs have suffered from the reduction in choice between different providers of VHRs that would prevail in a free and competitive market for VHRs;

(c)   The quality of VHRs available to Plaintiffs and other purchasers of VHRs has been reduced from that which would prevail in a free and competitive market for VHRs;

(d)   Plaintiffs and other purchasers of VHRs have incurred increases in expenses in their business operations by being forced to pay prices for VHRs at levels artificially inflated above the price levels that would prevail in a free and competitive market for VHRs; and

(e)   The public at large has been injured in that Carfax has deprived purchasers of VHRs of the opportunity to purchase the best possible VHRs at the lowest possible prices, and deprived the public of the fullest possible choice between competing sources of VHRs in a free and competitive market.

## VIII.  CLAIMS FOR RELIEF

### FIRST CLAIM

#### Exclusive Dealing Arrangements
#### Under Section 3 of Clayton Act, 15 U.S.C. § 14

195.   Plaintiffs repeat and reallege all of the preceding allegations as if each were fully set forth herein.

196.   Exclusive dealing arrangements are agreements requiring purchasers of any particular product or service to purchase all of its required quantity of such products or services from a single seller.

197.   The requirements of 37 of about 40 auto manufacturer CPO programs, pursuant to long-term exclusive agreements between Carfax and 37 automobile manufacturers, that automobile dealers participating in such programs purchase a VHR from Carfax for each vehicle qualifying as a CPO vehicle, are unlawful exclusive dealing arrangements, in violation of Section 3 of Clayton Act, 15 U.S.C. § 14.

198.   The requirements of Autotrader.com and Cars.com, the two leading classified used automobile listing websites, pursuant to long-term exclusive agreements with Carfax, that only Carfax VHRs, and not VHRs from alternative suppliers, may be displayed and interactively linked on those websites for the use of vehicle shoppers, are unlawful exclusive dealing arrangements, in violation of Section 3 of Clayton Act, 15 U.S.C. § 14.

199.   Carfax's exclusivity arrangements with 37 of about 40 auto manufacturers with CPO programs, requiring automobile dealers participating in such programs to purchase VHRs from Carfax for each vehicle qualifying as a CPO vehicle, forces participating dealers to purchase Carfax VHRs rather than VHRs from an alternative source.

200.    Carfax's exclusivity arrangements with two leading websites, requiring that only Carfax VHRs are displayed and interactively linked to shoppers in classified ads purchased by sellers of used vehicles forces sellers of used vehicles to purchase Carfax VHRs rather than VHRs from an alternative source.

201.    Carfax pays the automobile manufacturer, in the form of cash or non-cash marketing support of considerable monetary value, for the right to be the exclusive VHR provider in the automobile manufacturer's CPO program under long-term exclusivity agreements.

202.    Pursuant to its exclusivity agreements with the Autotrader Group and with Classified Ventures, Carfax provides significant cash or non-cash "marketing support" to the Autotrader Group and to Classified Ventures, in order to obtain the agreement of the Autotrader Group and Classified Ventures to keep VHRs from providers other than Carfax off of the Autotrader.com Cars.com websites.

203.    Carfax has market power in the publication and sale of VHRs in the United States, and a ninety percent market share.

204.    The amount of interstate commerce in used vehicles sold in 37 automobile manufacturer CPO programs affected by the foregoing exclusivity arrangements between Carfax and automobile manufacturers is not insubstantial (automobile manufacturer CPO programs sold 1,834,746 used vehicles in 2012, more than 12 percent of used car sales by franchised dealers).

205.    The amount of interstate commerce in classified listings of used vehicles on websites affected by the foregoing exclusivity arrangements between Carfax and the Autotrader Group and Cars.com is not insubstantial (more than 3 million used vehicles listed on Autotrader.com and more than 2.5 million used vehicles listed on Cars.com).

206.    The requirement of a participating dealer's purchase of Carfax VHRs for used vehicles in CPO programs, as opposed to VHRs from an alternative source, is not justified by the need for quality assurance in a CPO program. The same level of quality assurance could be achieved in a less restrictive fashion, i.e., the promulgation of objective quality assurance standards which alternative sources of VHRs could satisfy.

207.    The requirement of Carfax's exclusivity agreements with the Autotrader Group and with Classified Ventures, that only Carfax VHRs be displayed and interactively linked in classified listings on Autotrader.com and Cars.com, as opposed to VHRs from an alternative source, is not justified by the need for quality assurance classified advertising. The same level of quality assurance could be achieved in a less restrictive fashion, i.e., the promulgation of objective quality assurance standards which alternative sources of VHRs could satisfy.

208.    Defendant has consciously committed to a common scheme designed to achieve an unlawful objective.

209.    The wrongful acts and conduct of the Defendant as set forth above unreasonably restrain and/or restrict interstate or foreign trade or commerce in the relevant product.

210.    The wrongful actions and conduct of Defendant as set forth above suppressed competition.

211.    By reason of the Defendant's violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, Plaintiffs have been injured in their business and property, and are entitled to recover threefold such actual damages as the jury finds Plaintiffs to have sustained, injunctive relief, and Plaintiffs' cost of suit, including reasonable attorney's fees, pursuant to Sections 4(a) and 15 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

## SECOND CLAIM

### Agreements in Unreasonable Restraint of Trade
### Under Section 1 of Sherman Act, 15 U.S.C. § 1

212.   Plaintiffs repeat and reallege all of the preceding allegations as if each were fully set forth herein.

213.   The cumulative effect of Carfax's foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles, is to unreasonably restrain trade in the market for the publication and sale of VHRs in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

214.   Carfax has market power in the relevant market for the publication and sale of VHRs in the United States, and a ninety percent market share.

215.   The effect of Carfax's (a) exclusivity arrangements with manufacturers of about 37 of about 40 automobile brands on their CPO programs, requiring participating dealers to purchase Carfax VHRs on certified vehicles and to provide them free of charge to consumers shopping for used vehicles, (b) exclusivity arrangements with the two largest websites offering classified listing of used automobiles and light trucks offered for sale, requiring that only Carfax VHRs purchased by sellers of vehicles and no VHRs from other VHRs providers are displayed and interactively linked on the websites, together with (c) Carfax's pricing program which offers dealers of used automobiles and light trucks an unlimited number of VHRs at a rate determined by the number of used vehicles in their inventory, is to force dealers of used automobiles and light trucks to purchase Carfax VHRs for their entire inventory of used vehicles and to provide

them free of charge to consumers shopping for used vehicles, in spite of dealers' preferences for competitively-priced and more reliable VHRs from other sources.

216.   The cumulative effect of Carfax's foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles, is to raise prices on VHRs, decrease quality of VHRs, reduce choice in the selection of sources and VHRs, exclude competition from alternative sources of VHRs, and to harm consumer welfare.

217.   Carfax's foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles, is not justified by the need for quality assurance in CPO programs and classified automobile listings. The same level of quality assurance could be achieved in a less restrictive fashion, i.e., the promulgation of objective quality assurance standards which alternative sources of VHRs could satisfy.

218.   Defendant has consciously committed to a common scheme designed to achieve an unlawful objective.

219.   The wrongful acts and conduct of the Defendant as set forth above unreasonably restrain and/or restrict interstate or foreign trade or commerce in the relevant product.

220.   The wrongful actions and conduct of Defendant as set forth above suppressed competition.

221.   By reason of the Defendant's violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, Plaintiffs have been injured in their business and property, and are entitled to recover

threefold such actual damages as the jury finds Plaintiffs to have sustained, injunctive relief, and Plaintiffs' cost of suit, including reasonable attorney's fees, pursuant to Sections 4(a) and 15 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

## THIRD CLAIM

## Monopolization Under Section 2 of Sherman Act, 15 U.S.C. § 2

222.   Plaintiffs repeat and reallege all of the preceding allegations as if each were fully set forth herein.

223.   A market is monopolized when a party possesses market power (and that market power has been willfully acquired or maintained by anticompetitive or unnecessarily exclusionary conduct).

224.   Carfax has market power in the relevant market for the publication and sale of VHRs in the United States, and a ninety percent market share.

225.   Carfax has acquired and maintained market power in the publication and sale of VHRs in the United States, not through competition on the merits, but through anticompetitive or unnecessarily exclusionary conduct, in the form of the foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles.

226.   The cumulative effect of Carfax's foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles, is to

46

raise prices on VHRs, decrease quality of VHRs, reduce choice in the selection of sources and VHRs, exclude competition from alternative sources of VHRs, and to harm consumer welfare.

227.    Defendant has consciously committed to a common scheme designed to achieve an unlawful objective.

228.    The wrongful acts and conduct of the Defendant as set forth above unreasonably restrain and/or restrict interstate or foreign trade or commerce in the relevant product.

229.    The wrongful actions and conduct of Defendant as set forth above suppressed competition.

230.    By reason of the Defendant's violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Plaintiffs have been injured in their business and property, and are entitled to recover threefold such actual damages as the jury finds Plaintiffs to have sustained, injunctive relief, and Plaintiffs' cost of suit, including reasonable attorney's fees, pursuant to Sections 4(a) and 15 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

## FOURTH CLAIM

### Attempted Monopolization Under Section 2 of Sherman Act, 15 U.S.C. § 2

231.    Plaintiffs repeat and reallege all of the preceding allegations as if each were fully set forth herein.

232.    An attempt to monopolize occurs when a person (a) engages in anticompetitive or unnecessarily exclusionary conduct, (b) with a specific intent to monopolize, (c) presenting a dangerous probability of achieving market power.

233.    Carfax has not engaged in competition on the merits, but anticompetitive or unnecessarily exclusionary conduct, in the form of the foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures,

requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles.

234.   A specific intent to monopolize may be inferred from Carfax's anticompetitive or unnecessarily exclusionary conduct, particularly in light of its overwhelming market share of ninety percent in the publication and sale of VHRs in the United States.

235.   The cumulative effect of Carfax's foregoing exclusivity agreements with 37 of about 40 automobile manufacturers, and with the Autotrader Group and Classified Ventures, requiring the exclusive use of Carfax VHRs, as opposed to VHRs from other sources, in automobile manufacturers' CPO programs and in classified listings of used automobiles, is to raise prices on VHRs, decrease quality of VHRs, reduce choice in the selection of sources and VHRs, exclude competition from alternative sources of VHRs, and to harm consumer welfare.

236.   Carfax's foregoing anticompetitive or unnecessarily exclusionary conduct evidences a dangerous probability that it will extend or maintain market power. Defendant has consciously committed to a common scheme designed to achieve an unlawful objective.

237.   The wrongful acts and conduct of the Defendant as set forth above unreasonably restrain and/or restrict interstate or foreign trade or commerce in the relevant product.

238.   The wrongful actions and conduct of Defendant as set forth above suppressed competition.

239.   By reason of the Defendant's violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Plaintiffs have been injured in their business and property, and are entitled to recover threefold such actual damages as the jury finds Plaintiffs to have sustained, injunctive relief, and Plaintiffs' cost of suit, including reasonable attorney's fees, pursuant to Sections 4(a) and 15 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

## VIII.  <u>PLAINTIFFS DEMAND A JURY TRIAL</u>

Plaintiffs hereby demand a jury trial pursuant to Fed. R. Civ. P. 38(b), with respect to all issues triable of right by a jury.

**WHEREFORE**, PLAINTIFFS respectfully demand judgment against Defendant as follows:

(a)     On the First Claim in an amount to be determined at trial but in no event less than Fifty Million ($50,000,000) Dollars;

(b)     On the Second Claim in an amount to be determined at trial but in no event less than Fifty Million ($50,000,000) Dollars;

(c)     On the Third Claim in an amount to be determined at trial but in no event less than Fifty Million ($50,000,000) Dollars;

(d)     On the Fourth Claim in an amount to be determined at trial but in no event less than Fifty Million ($50,000,000) Dollars;

(e)     That Plaintiffs recover from Defendant the costs of this suit and reasonable attorneys' fee;

(f)     Plaintiffs request that Defendant be enjoined from enforcing any of the agreements complained of that are determined to have violated the federal antitrust laws, and not to enter into such agreements in the future; and

49

(g)     For such other relief as the Court may seem just, proper and equitable.

Dated:   Mineola, New York
         April 22, 2013

                              BELLAVIA BLATT ANDRON & CROSSETT, LLP

                      By:     _____

                              Leonard A. Bellavia, Esq. (LB-0780)
                              Mark W. Gaffney, Esq. (MG-5050) (Of Counsel)
                              200 Old Country Road, Suite 400
                              Mineola, NY 11501
                              Tel.  (516) 873-3000
                              Fax  (516) 873-9032
                              e-mail: lbellavia@DealerLaw.com

                              *Attorneys for Plaintiffs*