UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                        :

MAXON HYUNDAI MAZDA, *et al.*,              :

                                                                        Plaintiffs,     :

                     - against -                          : No. 13 CV 2680 (AJN) (RLE)

CARFAX, INC., a Pennsylvania corporation,      :

                                                                     Defendant.  :

------------------------------------------------------------------ X


BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY
FROM PLAINTIFFS WITH RESPECT TO DEFENDANT CARFAX, INC.'S
FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Christopher M. Mason (CM 7146)
NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
cmason@nixonpeabody.com

James L. Cooper
Kenneth L. Chernof
ARNOLD & PORTER, LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
james.cooper@aporter.com

*Attorneys for Defendant Carfax, Inc.*

Dated: May 8, 2015

Table of Contents

|  |  | Page |
|---|---|---|
| Table of Authorities | | ii |
| Preliminary Statement | | 1 |
| Background of the Disputes | | 2 |
| Argument | | 3 |
| I. | DOCUMENTS CONCERNING PLAINTIFFS' PRICING AND FINANCIAL INFORMATION ARE DISCOVERABLE AND RELEVANT | 3 |
| II. | THE ADVERTISEMENTS AND SOLICITATIONS SOUGHT ARE RELEVANT AND NOT PRIVILEGED OR ATTORNEY WORK PRODUCT | 8 |
| | A. The Advertisements and Solicitations Sought Are Relevant | 9 |
| | B. Advertisements and Solicitations Are Not Privileged or Attorney Work Product | 10 |
| Conclusion | | 13 |
| Certification of Good Faith Pursuant to Fed. R. Civ. P. 37 | | 14 |

Table of Authorities

Cases                                                                                             Pages

*Air Tech Equip., Ltd. v. Humidity
    Ventilation Sys.*,
    No. 05-CV-77 (CPS), 2006 U.S. Dist.
    LEXIS 80198 (E.D.N.Y. Nov. 2, 2006).................................................................... 6, 8

*Auscape Int'l. v. Nat'l Geographic Soc'y*,
    No. 92-CIV-6441 LAK,
    2002 WL 31250727 (S.D.N.Y.
    Oct. 8, 2002) ........................................................................................................ 11

*Berger v. Seyfarth Shaw, LLP*,
    No. C 07-05279 (JSW) (MEJ),
    2008 WL 4681834 (N.D. Cal
    Oct. 22, 2008) ...................................................................................................... 10

*Daval Steel Prods. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir. 1991)................................................................................ 6

*E.E.O.C. v. CRST Van Expedited, Inc.*,
    No. C07-0095, 2009 WL 136025
    (N.D. Iowa Jan. 20, 2009)..................................................................................... 11

*Hanover Shoe v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968)............................................................................................. 5, 6

*Hickman v. Taylor*,
    329 U.S. 495 (1947)............................................................................................. 7

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)............................................................................................. 5

*In re Grand Jury Subpoena Dated
    Jan. 4, 1984*,
    750 F.2d 223 (2d Cir. 1984)................................................................................. 10

*In re Methyl Tertiary Butyl Ether (MTBE)
    Prods. Liability Litig.*,
    293 F.R.D. 568 (S.D.N.Y. 2013) .......................................................................... 12

*In re Urethane Antitrust Litig.*,
    237 F.R.D. 454 (D. Kan. 2006)............................................................................. 6, 7

| Cases | Pages |
|---|---|
| *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 10876331 (D. Kan. Jan. 20, 2010) | 6, 7 |
| *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, No. 1-01-704, 2004 U.S. Dist. LEXIS 32274 (S.D. Ohio June 7, 2004) | 7 |
| *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290 (2d Cir. 2008) | 4 |
| *Maresco v. Evans Chemetics*, 964 F.2d 106 (2d Cir. 1992) | 7 |
| *Meltzer v. CNET Networks, Inc.*, No. 3023-CC, 2007 WL 2593065 (Del. Ch. Sept. 6, 2007) | 10 |
| *Nat'l Soc. of Prof. Eng'rs v. United States*, 435 U.S. 679 (1978) | 4 |
| *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) | 6 |
| *Paper Corp. of the United States v. Schoeller Tech. Papers*, 759 F. Supp. 1039 (S.D.N.Y. 1991) | 7 |
| *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002) | 4 |
| *Perkins v. Chelsea Piers Mgmt.*, No. 11 Civ. 8998 (ALC) (JCF), 2012 WL 4832814 (S.D.N.Y. Oct. 10, 2012) | 6 |
| *Schiller v. City of N.Y.*, 245 F.R.D. 112 (S.D.N.Y. 2007) | 11 |
| *United States v. Grinnell Corp.*, 384 U.S. 563 (1966) | 4 |
| *United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) | 10 |

| Cases | Pages |
|---|---|
| *Village of Rosemont v. Priceline.com Inc.*, No. 90 C 04428, 2010 WL 4876217 11 n.1 (N.D. Ill. Nov. 22, 2010) | 11 n.2 |
| *Wultz v. Bank of China Ltd.*, 304 F.R.D.384 (S.D.N.Y. 2015) | 10, 11 |
| *Zanowic v. Reno*, No. 97 Div. 5292, 2000 WL 1376251 (S.D.N.Y. Sept. 25, 2000) | 6 |

Statutes and Rules

| | |
|---|---|
| Fed. R. Civ. P. 26 | 7 |
| Fed. R. Civ. P. 37 | 1 |
| 15 U.S.C.A. §§ 1-2 (West 2015) | 2 |

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and this Court's April 16, 2015 Order, Defendant Carfax, Inc. ("Carfax") respectfully submits this brief in support of its motion to compel Plaintiffs to produce two categories of documents which Plaintiffs have refused to produce in response to certain demands in Carfax's First Request for Production of Documents to all Plaintiffs by Defendant Carfax, Inc. (the "Document Requests").

Preliminary Statement

Four hundred and sixty-nine car dealers have sued Carfax, alleging that Carfax's Vehicle History Reports ("VHR") are "overpriced and less reliable" than competitor VHRs. Second Amended Complaint ("SAC", [PACER Dkt. 56]) ¶ 512. They claim generally that each Plaintiff's used car business has been injured because, among other things, in some cases a franchisor car manufacturer requires a Plaintiff dealer to supply Carfax VHRs to customers buying a used car of the franchisor's brand. They also claim generally that they have been injured because two third-party classified used car advertising websites have, at some times, provided hyperlinks only to Carfax VHRs.

Plaintiffs refused, however, to produce documents that go directly to these issues, including documents showing how each Plaintiff fared with respect to matters such as the price, time to sale, and profitability of selling cars with and without Carfax VHRs. Plaintiffs also refused to produce documents showing how their counsel solicited the Plaintiff dealers for this case, even though these advertising and solicitation documents explicitly estimate how much Plaintiffs can expect to recover for their alleged damages in this case.

These materials are central to the allegations in Plaintiffs' complaint and, accordingly, are crucial to Carfax's ability to defend this case. Plaintiffs brought this case and,

through counsel, have created their theory of the case. Having done so, they must live up to their fundamental obligations to provide discovery.

Background of the Disputes

Plaintiffs' current complaint alleges that Carfax has violated Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1-2 (West 2015). On December 30, 2014, pursuant to an agreed scheduling order by Judge Alison J. Nathan [PACER Dkt. 64], Carfax served Plaintiffs with its Document Requests. *See* Exhibit A to the Declaration of Annica Sunner Bianco ("Bianco Dec.").

On February 2, 2015, Plaintiffs served Responses and Objections to the Document Requests ("Plaintiffs' Responses and Objections"). *See* Bianco Dec. Ex. B. First, in response to Document Requests Nos. 23, 24, and 26, Plaintiffs refused to produce documents showing the transactional details of each Plaintiff's car sales with and without Carfax VHRs. These data would show the prices at which cars are sold, how long it takes to sell those cars, whether a Carfax VHR, a competing VHR, or no VHR at all was provided, and the revenues and profits earned by the Plaintiffs on those differential sales. *See* Declaration of Dr. John Hayes ("Hayes Dec.") ¶ 7. Second, in response to Document Request No. 35, Plaintiffs refused to produce documents relating to their counsels' advertisements and solicitations seeking potential plaintiffs to join the case, even though those documents explicitly estimate how much in damages Plaintiffs can expect to recover here.[1]

Despite efforts to resolve these issues, the parties reached an impasse. On March 19, 2015, Carfax therefore submitted a pre-motion letter to Judge Alison B. Nathan. *See*

---

[1] Carfax is not, by focusing on these four enumerated Document Requests, waiving any arguments with respect to any other of its requests.

Bianco Dec. Ex. C.  Plaintiffs responded on March 24, 2015.  *See* Bianco Dec. Ex. D.  Judge Nathan referred these disputes to this Court, which ordered the parties to appear to discuss them on April 16, 2015.  In the days before that conference, Plaintiffs filed a letter, dated April 9, 2015, further detailing their positions.  *See* Bianco Dec. Ex. E.  Carfax submitted a letter in response on April 15, 2015.  *See* Bianco Dec. Ex. F.

Based on this Court's direction during the conference on April 16, 2015, the parties consulted further and submitted a joint letter on April 24, 2015 setting forth those discovery disputes requiring immediate attention.  *See* Bianco Dec. Ex. G.  The letter covers three disputes, two of which concern Plaintiffs' refusal to produce material responsive to the Document Requests as described above.

<u>Argument</u>

Plaintiffs have no good excuse for refusing to produce the documents requested. The requested documents are relevant and discoverable and not unduly burdensome to produce.

POINT I

DOCUMENTS CONCERNING PLAINTIFFS' PRICING AND FINANCIAL INFORMATION ARE DISCOVERABLE AND RELEVANT

Carfax has served several document requests seeking transactional data from each Plaintiff regarding used car sales at issue in this case.  *See* Document Requests Nos. 23, 24, and 26.  Plaintiffs' transactional data are directly relevant to allegations in the SAC.  *See* Hayes Dec. ¶¶ 4-6, 9.  As noted above, they go directly to Plaintiffs' allegations that Carfax reports are inferior and overpriced, and that the allegedly required use of Carfax reports has injured each Plaintiff in its business.

The information sought by the Document Requests would, for example, allow Carfax's economists to assess "whether the use of Carfax VHRs, as opposed to other brands of

VHRs, produces higher prices, or faster sales (increased vehicle turnover), or both, for the Plaintiffs in this case (which would tend to lead to greater revenues and profits), and are therefore a superior product, or a product the use of which is justified by its higher quality in such respects." Hayes Dec. ¶ 6. If a Plaintiff's financial information showed that Carfax VHRs are associated with higher and faster sales volume, and more favorable sales terms, that evidence would show that the challenged conduct is in fact *pro*-competitive and thus not a violation of the antitrust laws. *See Major League Baseball Props., Inc. v. Salvino, Inc*., 542 F.3d 290, 316 (2d Cir. 2008) (noting that rule of reason test involves determining "whether the challenged agreement is one that promotes competition or suppresses competition") (quoting *Nat'l Soc. of Prof. Eng'rs v. United States*, 435 U.S. 679, 691 (1978)).

Similarly, Carfax believes the requested financial information will tend to show that rather than a "willful acquisition or maintenance of" monopoly, *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107-108 (2d Cir. 2002), demand for Carfax's products is "a consequence of a superior product, business acumen, or historic accident", *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). Plaintiffs' pricing and financial information will speak directly to this point—*i.e.* whether using a Carfax VHR is more profitable than using another brand of VHR or no VHR at all. To an economist, "[s]uch measurements could be relevant to show that Plaintiffs purchase or use Carfax VHRs because they make more money if they do compared to using no VHR or using another brand of VHR" or "that Plaintiffs did not suffer any damages from supposedly higher prices for Carfax VHRs because their purchase or use of Carfax VHRs led to higher profits than if they had purchased or used other, cheaper VHRs (or no VHRs)." Hayes Dec. ¶ 9.

Nor is the necessary information sought by Carfax from Plaintiffs available to Carfax from its own files. "Carfax's own documents would not, for example, contain Plaintiffs' revenues, profits, and the frequency or volume of use of other brands of VHRs by Plaintiffs, nor would they include Plaintiffs' sales of vehicles in connection with another brand of VHR that could then be compared to sales of similar vehicles in connection with Carfax VHRs." Hayes Dec. ¶ 14. Plaintiffs are the only party with access to these particular, relevant data, and the data is relevant to the claims and defenses in the case.

Plaintiffs' respond, not by disputing that the data sought is relevant to their allegations—but instead by labeling the requests as seeking "downstream data" and then asserting that any such data is *per se* protected from discovery. *See* Bianco Dec. Ex. B (Responses to Request Nos. 23, 24, and 26). As an initial matter, the challenged Document Requests include documents that cannot be characterized as "downstream data." For example, Document Request 23 seeks information about how much Plaintiffs paid to secure Carfax and other providers' VHRs. *See*, *e.g.,* Request Nos. 23(ggggg) through 23(zzzzz). This discovery is plainly proper in light of Plaintiffs' claim that Carfax overcharged them for the VHRs in question.

Moreover, Plaintiffs are wrong that there is any *per se* prohibition against discovery of transactional sales data when that data is relevant to the issues in suit. In *Hanover Shoe v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), the Supreme Court held that an antitrust defendant accused of charging supra-competitive prices could not assert a "passing on" defense, *i.e.*, could not assert that the plaintiff was not harmed because the defendant passed any overcharge on to its downstream customers. *See id.* at 491-93. *See also Illinois Brick Co. v. Illinois*, 434 U.S. 881 (1977) (downstream purchasers cannot pursue antitrust claims based on

claimed upstream antitrust violations that allegedly increased the purchasers' costs). As a result, discovery to support such "passing on" arguments would be irrelevant.

In the 47 years since *Hanover Shoe* "a growing number of courts have recognized that *Hanover Shoe* does not stand as a *per se* barrier to discovery of downstream data." *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 10876331 at *3 (D. Kan. Jan. 20, 2010). These courts have recognized the relevance of "downstream" discovery in a number of situations. *See, e.g., id*. at *4-5 (permitting "downstream" discovery to dispute antitrust liability on the ground of increased prices were not the result of anticompetitive conduct by defendant); *Air Tech Equip., Ltd. v. Humidity Ventilation Sys.*, No. 05-CV-77 (CPS), 2006 U.S. Dist. LEXIS 80198, at *10 (E.D.N.Y. Nov. 2, 2006) (permitting "downstream" discovery to test non-overcharge damage theories such as lost profits). In sum, "it can no longer be said that there exists a practice of proscribing discovery of downstream data." *In re Urethane Antitrust Litig.*, 237 F.R.D. 454, 462-63 at *5 (D. Kan. 2006). Instead, "if downstream data is relevant to a permissible claim or defense asserted in the case, it may be discovered." *Id.* at *5.

The discovery sought by Carfax is clearly relevant to the issues in this case. In assessing relevance, "the party seeking discovery bears the burden of initially showing relevance." *Perkins v. Chelsea Piers Mgmt.*, No. 11 Civ. 8998 (ALC) (JCF), 2012 WL 4832814, at *1 (S.D.N.Y. Oct. 10, 2012) (quoting *Zanowic v. Reno*, No. 97 Div. 5292, 2000 WL 1376251, at *6 (S.D.N.Y. Sept. 25, 2000)). Because information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence, *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991), if the requested material could lead to other information that may be relevant to the subject matter of the action then the requested material is relevant—which is why "[t]his obviously broad rule is liberally construed." *Id*. (citing *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978) (relevance under rule 26(b)(1) is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case")). *Accord, e.g.*, *Maresco v. Evans Chemetics*, 964 F.2d 106, 114 (2d Cir. 1992) ("the scope of discovery under Fed. R. Civ. P. 26(b) is very broad"); *Paper Corp. of the United States v. Schoeller Tech. Papers*, 759 F. Supp. 1039, 1048 (S.D.N.Y. 1991) ("the phrase 'relevant to any subject matter involved in the pending action' has been construed broadly to 'encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

In the circumstances presented here, where (i) much of the financial information sought does not relate to downstream pricing, (ii) all of the information is relevant to allegations made by the Plaintiffs regarding the merits of the case rather than a "pass-on defense", and (iii) where the information is not available to the party seeking discovery, the Court should compel production. *See e.g.*, *In re Urethane Antitrust Litig.*, 237 F.R.D. at 462-64. To this end, several courts have held that "downstream" discovery is relevant specifically on the issue of antitrust liability. *See, e.g.*, *J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, No. 1-01-704, 2004 U.S. Dist. LEXIS 32274, at *13-14 (S.D. Ohio June 7, 2004) ("downstream" discovery relevant to defendant's theory that its prices were set not by its purported "exclusive contracts" with third parties, but rather by market forces outside of defendant's control, including conduct by plaintiffs); *In re Urethane Antitrust Litig.*, 2010 WL 10876331, at *5 ("downstream" data "relevant to the issue of liability" to establish that the defendants' prices were the result of normal market forces and prevailing market conditions rather than the anticompetitive conduct of defendants).

In the *Air Tech* case, for example, the party alleging antitrust violations charged that the alleged violator's behavior hampered claimants from growing and profiting from their businesses in the relevant market. *Air Tech Equip.*, 2006 U.S. Dist. LEXIS 80198, at *2. When the alleged violator sought "downstream" discovery to address this claim, the court held that it was "entitled to some information to test whether [the charging party's] purported loss of business was attributable to factors other than [the alleged violator's] anticompetitive conduct." *Id*. at *9. Plaintiffs here allege that supposed overcharges for VHRs by Carfax, and supposedly overbroad exclusivity provisions for use of Carfax VHRs in certain situations, similarly hamper their business. *See* SAC ¶¶ 502-503, 509-510, 512, 515, 520-525, 529-531, 533-534, 538, 548-550, 555-558, 569, 571-573, 582, and 591. Carfax is entitled to information from Plaintiffs to show that, to the contrary, Carfax not only has a better product, as shown by its better performance in Plaintiffs' businesses, but that Plaintiffs would not benefit as much (or not at all) from using another brand of VHR or no VHR.

POINT II

THE ADVERTISEMENTS AND SOLICITATIONS SOUGHT ARE RELEVANT AND NOT PRIVILEGED OR ATTORNEY WORK PRODUCT

Carfax's Document Request No. 35 seeks advertisements and solicitations sent to Plaintiffs for legal services in this action. *See* Bianco Dec. Ex. A. Plaintiffs have objected to this narrow request on the grounds that such a request is irrelevant (not reasonably calculated to lead to the discovery of admissible evidence) and improperly seeks material protected by the attorney-client privilege or attorney work-product doctrine. These objections are baseless and unreasonable. As outlined below, the documents sought are relevant and Plaintiffs had no intent or expectation that they would be confidential or privileged.

A. *The Advertisements and Solicitations Sought Are Relevant.*

The advertisements or solicitations about this case that Carfax has received from used car dealers that, to the best of its knowledge, are not Plaintiffs, *see* Ortmeier Dec. Exs. A-C, include estimated damages calculations that are plainly relevant to Plaintiffs' theory of the case and damages calculations:

**BELLAVIA BLATT ANDRON & CROSSETT, PC**
ATTORNEYS AT LAW

200 OLD COUNTRY ROAD · SUITE 400
MINEOLA, NEW YORK 11501
www.DealerLaw.com
TELEPHONE 516-873-3000
FACSIMILE 516-873-9032

June 7, 2013

Re: Dealer Lawsuit vs. CARFAX

Dear Mr. [REDACTED]

As you may be aware, this firm recently filed a mass action lawsuit against CARFAX on behalf of several hundred automobile dealers. Each day, more dealerships continue to join and we would like to extend this opportunity to your dealership. The legal fee is a hybrid low flat fee plus contingency.

The window of opportunity for you to join this case will soon close. We are seeking substantial monetary damages for alleged abuses of CARFAX's monopolistic power in the Vehicle History Report market in violation of U.S. anti-trust laws. Set forth below are the estimated recovery calculations.

| Small Dealership | | Medium Dealership | | Large Dealership | |
|---|---|---|---|---|---|
| Annual Overcharge | 6,000 | Annual Overcharge | 12,000 | Annual Overcharge | 18,000 |
| x 4 yr. statute of limitations | 24,000 | x 4 yr. statute of limitations | 48,000 | x 4 yr. statute of limitations | 72,000 |
| plus 2 yrs. during lawsuit | 12,000 | plus 2 yrs. during lawsuit | 24,000 | plus 2 yrs. during lawsuit | 36,000 |
| SUBTOTAL | 36,000 | SUBTOTAL | 72,000 | SUBTOTAL | 108,000 |
| After treble damages (x3) | $108,000* | After treble damages (x3) | $216,000* | After treble damages (x3) | $324,000* |

*Interest and attorneys fees are also recoverable in addition to the above figures.

Bellavia Blatt is one of the leading dealer rights law firms in the United States. Our firm has a long history of defending the rights and protecting the interests of new and used car dealerships. We have organized this case in response to complaints dealers have made to us concerning the business practices of CARFAX as well as the poor reliability of their vehicle history reports.

For more information about our firm and this case, please visit www.DealerLaw.com or contact me by phone or email at LBellavia@DealerLaw.com. In addition to the information sheets, please see the enclosed recent *Wall Street Journal* and *Automotive News* articles discussing our suit against CARFAX.

I urge you to act now so that you do not miss the possibility of participating in what could be a very substantial recovery of monetary damages. Call today to obtain information about participation in this very important matter.

Very truly yours,

Leonard A. Bellavia

NEW JERSEY · MANHATTAN · LONG ISLAND · WINDHAM · CONNECTICUT

What could be more relevant than a projection of purportedly appropriate damages prepared and circulated by Plaintiffs' own counsel to entice dealers to become plaintiffs in this action?

In cases such as this, where a solicitation is relevant to Plaintiffs' purpose in bringing the lawsuit, and the materials are not privileged, the Court will compel discovery of the requested documents. *See Berger v. Seyfarth Shaw, LLP*, No. C 07-05279 (JSW) (MEJ), 2008 WL 4681834, at *3 (N.D. Cal Oct. 22, 2008) (a letter and accompanying agreement concerning a proposed third party's financial assistance in a litigation were relevant, not privileged, and producible); *Meltzer v. CNET Networks, Inc.*, No. 3023-CC, 2007 WL 2593065, at *1 (Del. Ch. Sept. 6, 2007) ("motion to compel production of the solicitation letter is granted because that letter is relevant to the issues of whether plaintiffs have a proper purpose for bringing this suit and whether this purpose is reasonably related to their status as stockholders.").

B.   *Advertisements and Solicitations Are Not Privileged or Attorney Work Product.*

The documents sought—documents circulated to third party dealers not yet represented by Plaintiff's counsel—are not in any way privileged. Nor can Plaintiffs prove otherwise.

A party claiming attorney-client privilege to avoid document production bears the burden of establishing those facts that are the essential elements of the privileged relationship. *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 391 (S.D.N.Y. 2015) (citing *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984)) (internal quotation marks and citations omitted). That party must show that the documents are, "(1) between [the] client and his or her attorney (2) . . . intended to be, and in fact were, kept confidential[, and] (3) for the purpose of obtaining or providing legal advice." *Id*. at 390 (quoting *United States v. Mejia*, 655

F.3d 126, 132 (2d Cir. 2011)). (The party resisting discovery also bears the burden of proving that the privilege has not been waived, *id*. at 391, a significant problem for Plaintiffs here given that the advertisements and solicitations at issue appear not to have been distributed with protections from waiver.)

Advertisements to or solicitations of potential plaintiffs cannot meet this standard. Courts in this District have clearly held that "solicitation letters" are not privileged. *See Auscape Int'l. v. Nat'l Geographic Soc'y*, No. 92-CIV-6441 LAK, 2002 WL 31250727, at *1 (S.D.N.Y. Oct. 8, 2002). In *Auscape*, the court ordered plaintiffs to produce communications that plaintiffs described as "confidential" and "sent to clients and prospective clients discussing their right to sue . . . and advising them how to proceed." *Id*. Such "letters to prospective clients to encourage their involvement in a class action and a proposed form of retainer agreement, regardless of whether the sending of them was in furtherance of the interests of existing clients, are not communications between attorney and client and are not confidential." *Id*. Rather, these communications "are, in significant measure, direct mail advertising." *Id*.

Similarly, in *Schiller v. City of New York*, the court held that, while the recipient's perception of a potential attorney-client relationship is relevant, a letter distributed by plaintiffs' attorney along with a questionnaire was not privileged because it "would have been unreasonable" for a recipient to conclude that he or she was seeking representation by the law firm under these circumstances. 245 F.R.D. 112, 116 (S.D.N.Y. 2007); *see also E.E.O.C. v. CRST Van Expedited, Inc.*, No. C07-0095, 2009 WL 136025, at *3 (N.D. Iowa Jan. 20, 2009) ("[m]erely sending a letter to potential class members, or calling potential class members . . .

does not establish an attorney-client relationship. Accordingly, representations made in those communications . . . are not protected by the attorney-client privilege").[2]

As to the attorney work-product protection, Plaintiffs again bear the initial burden of demonstrating that it applies to the particular requested documents. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 293 F.R.D. 568, 574 (S.D.N.Y. 2013). Plaintiffs must show that the material allegedly protected is (1) a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Id*. at 573. This means the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id*. at 573-74. This initial burden is a heavy one because privileges are neither lightly created nor expansively construed. *Id*. The burden "may not be discharged by mere conclusory or ipse dixit assertions." *Id*. at 574 (quotations and citations omitted).

Plaintiffs have not carried these burdens to date. Indeed, the weight of authority is that they can never do so because advertising and solicitation material generally is not privileged or entitled to work product protection.

---

[2] Courts elsewhere have reached similar conclusions. *See, e.g.*, *Village of Rosemont v. Priceline.com Inc.*, No. 90 C 04428, 2010 WL 4876217, at *3 (N.D. Ill. Nov. 22, 2010) (neither of two pamphlets sent by plaintiffs' counsel to prospective clients was protected from discovery by attorney client privilege even though one pamphlet was sent after a meeting between counsel and the prospective plaintiff, noting that "to the extent that the pamphlets are marketing materials, they are not protected").

## Conclusion

For the reasons set forth above, Carfax respectfully requests the entry of an order compelling Plaintiffs to produce the documents requested in Carfax's Document Requests Nos. 23, 24, 26, and 35, striking Plaintiffs' objections to those requests, and granting Carfax such other and further relief as this Court deems reasonable and just.

Dated: May 8, 2015

Respectfully submitted,

NIXON PEABODY LLP

By:   /s/ Christopher M. Mason
Christopher M. Mason

437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111
cmason@nixonpeabody.com

James L. Cooper
Kenneth L. Chernof
ARNOLD & PORTER, LLP
555 Twelfth Street, NW
Washington, DC 20004
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
james.cooper@aporter.com

*Attorneys for Defendant Carfax, Inc.*

## Certification of Good Faith Pursuant to Fed. R. Civ. P. 37

Following the April 16, 2015 discovery conference, counsel for Defendant met with counsel for Plaintiffs, and then on subsequent days participated in several telephone calls to confer with Plaintiffs' counsel in a good faith attempt to resolve all outstanding discovery disputes. The parties resolved or deferred several issues, but Plaintiffs' counsel refused to produce documents on the two issues presented in this motion. As addressed above, Plaintiffs' refusal to produce material responsive to these requests is unjustified, and therefore the pursuit of this relief was necessary.

        /s/ Christopher M. Mason
        Christopher M. Mason