UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAXON HYUNDAI MAZDA, et al.,

                Plaintiffs,

         - against -

CARFAX, INC.,

                Defendant.

**MEMORANDUM OPINION & ORDER**

**13-CV-2680 (AJN)(RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Plaintiffs commenced this action on April 23, 2013, alleging violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, by Defendant Carfax. (Doc. No. 1) Specifically, Plaintiff Car Dealers allege that Carfax has: 1) monopolized the Vehicle History Report ("VHR") market through exclusivity agreements with manufacturers and used car sales websites; and 2) used its control of the market to overcharge used car dealers for its VHR's. On April 16, 2015, the Court held an initial conference during which it directed the Parties to submit a list of outstanding discovery disputes and a proposed briefing schedule. After receiving the Parties' submissions, the Court allowed briefing on two motions: Carfax's Motion to Compel Discovery from Plaintiffs with Respect to its First Requests for Production of Documents ("Carfax's Motion") and Plaintiffs' Motion to Compel Carfax's Production of Documents and Responses to Interrogatories Dating from the Beginning of the Alleged Anticompetitive Scheme ("Plaintiffs' Motion"). Having reviewed the Parties' briefs, Carfax's Motion is **DENIED** and Plaintiffs' Motion is **GRANTED IN PART**.

## II. DISCUSSION

### A. Defendant Carfax's Motion

#### 1. Downstream Data

In its motion, Carfax asks the Court to compel Plaintiffs to produce two categories of documents: 1) those showing how each Plaintiff fared with respect to the price, time until sale, and profitability of selling cars with and without Carfax Vehicle History Reports, and 2) those showing how Plaintiffs' counsel solicited Plaintiff car dealers for the case.

The Court finds that the documents in the first category are irrelevant to the claims and defenses in this action. As the United States Supreme Court held in *Hanover* and *Illinois Brick Co.*, injury is proven at the point of the overcharge and is measured according to "the full extent of the overcharge paid." *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968); *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977). Part of the Court's rationale for rejecting inquiries into "downstream" data after the point of an alleged overcharge was "an unwillingness to complicate treble-damages actions with attempts to trace the effects of the overcharge on the purchaser's prices, sales, costs, and profits, and of showing that these variables would have behaved differently without the overcharge." *Illinois*, 431 U.S. at 725. Although Carfax is not precisely alleging the "passing-on" defense at issue in *Hanover* and *Illinois*, the same concerns are present. Carfax attempts to establish that the price it charges for its VHR's is warranted because its product is superior and that, in any case, Plaintiff Dealers have not suffered damages because Carfax VHR's result in higher profits. As to the first argument, the price, sales, and profits of cars sold with Carfax VHR's have no bearing on whether or not Plaintiff Dealers were overcharged at the point that they purchased Carfax VHR's. To the extent that this data is relevant to Carfax's assertion that its product is "superior" and therefore

justifiably higher priced, data collected from Plaintiff Dealers, a non-randomly selected, small selection of the population of U.S. car dealers who by definition use Carfax almost exclusively, would be minimally probative; there is a serious question as to whether the sample would even be large enough to draw statistically significant conclusions. Furthermore, although the Court need not reach the issue of burden, the Court notes that Plaintiffs have submitted affidavits indicating that the time and expense of collecting downstream VHR data from a variety of different dealer management programs and paper files would far exceed any probative value the data could conceivably offer. (Decl. Jeffrey Kabacinski, Ex. 3-7)

As to the second argument, in anti-trust cases where Plaintiffs allege an "overcharge" theory of damages, events farther down the stream of commerce are irrelevant. Carfax's assertions that "such measurements could be relevant to show that Plaintiffs purchase or use Carfax VHRs because they make more money if they do . . ." is merely a variant phrasing of the "passing-on" defense. To the extent that a correlation between the use of Carfax VHR's and higher profits could be established through examining the data requested, the question would remain whether this correlation was a reflection of a superior product or an attempt on the part of Plaintiff Dealers to recoup money lost due to overcharging. The proper inquiry in "overcharge" anti-trust cases is not "why" or "whether" the cost was passed on to customers farther down stream, but "if" an overcharge was improperly imposed in the first place.

### 2.   Attorney Solicitations

The Court finds that the documents in the second category are irrelevant to the claims and defenses in this action. As the Court told counsel during the April 16, 2015 conference, award estimations included in solicitations or advertisements before discovery has even been conducted do not shed light on whether and to what extent Plaintiffs have incurred damages as a

result of Carfax's alleged conduct. Plaintiffs' counsel's pre-suit impressions do not tend to show that Carfax has or has not engaged in business activity violative of the Sherman or Clayton Acts and do not tend to show what impact that activity has or has not had.

Furthermore, to the extent that such estimations are construed as fair representations of Plaintiffs' "purpose" in filing this suit, as Carfax alleges, the Court finds that whether or not Plaintiffs had a proper purpose in bringing this suit is not an issue that has been raised in either the Complaint or Answer. The cases Carfax cites in support of its position are inapposite. *See Berger v. Seyfarth Shaw LLP*, No. C07-05279 (JSW) (MEJ), 2008 WL 4681834, at *1 (N.D. Cal. Oct. 22, 2008) (no attorney solicitation or advertisement at issue); *Meltzer v. CNET Networks, Inc.*, No. CIV.A. 3023-CC, 2007 WL 2593065, at *1 (Del. Ch. Sept. 6, 2007) (attorney solicitation relevant to plaintiff's particular burden in proceeding to establish that he was stockholder, that he had proper purpose for his inquiry, and that this proper purpose was reasonably related to his status as stockholder). The Court need not reach the Parties' privilege arguments, as it finds that the solicitations in question are not relevant.

**B.   Plaintiffs' Motion**

In their motion, Plaintiffs ask the Court to compel Carfax to produce two categories of documents: 1) those relating to Carfax's sales, pricing, marketing support and financial information from January 1, 1997, to the present, and 2) those relating to Carfax's decision to use exclusivity provisions in its agreements, underlying negotiations and communications, and documents analyzing the effects of those agreements, from January 1, 2004, to the present.

The Court finds that Plaintiffs' request for documents in the first category is overbroad. Plaintiffs allege that Carfax engaged in a longstanding conspiracy to monopolize the VHR market and raise prices through exclusivity agreements, but only cite the existence of these

agreements, which are presumptively legal, as proof. *Maxon Hyundai Mazda v. Carfax, Inc.*, No. 13-CV-2680 (AJN), 2014 WL 4988268, at *9 (S.D.N.Y. Sept. 29, 2014). Without a good faith basis for doing so, the Court will not allow Plaintiffs to go on a fishing expedition with expansive, potentially burdensome requests. Plaintiffs have not demonstrated that they need the level of detail articulated in their requests in order to prove their claims or rebut Carfax's defenses. Plaintiffs had the burden of demonstrating that transaction-level data exceeding the statute of limitations by ten years is relevant to the liability period and probative, and failed to do so.

The Court finds that Plaintiff's request for documents in the second category is temporally overbroad. Plaintiffs do not present and the Court has not found any reason to believe that drafting and analysis documents relating to exclusivity agreements not in existence during the liability period (pre-2008) would be any more probative than documents relating to agreements from 2008 onward. Because Plaintiff alleges that Carfax's scheme to monopolize the VHR market was largely in place before 2008, however, the Court will allow discovery into the drafting and analysis of Carfax exclusivity agreements from January 1, 2006, onward.

**IT IS THEREFORE ORDERED** that:

1) Defendant Carfax's Motion to Compel is **DENIED**.

2) Plaintiffs' Motion to Compel is **GRANTED IN PART**. Carfax must produce documents relating to its decision to use exclusivity provisions in its agreements, underlying negotiations and communications, and documents analyzing the effects of those agreements, from **January 1, 2006, to the present**.

**SO ORDERED this 24th day of July 2015.**
New York, New York

*Ronald Ellis* (signature)

The Honorable Ronald L. Ellis
United States Magistrate Judge